ERIE INSURANCE EXCHANGE *v.* GOSNELL

[No. 350, September Term, 1966.]

*Decided June 1, 1967.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, OPPENHEIMER, McWILLIAMS and FINAN, JJ.

*Edward C. Mackie,* with whom were *Rollins, Smalkin, Wes-
ton & Andrew* on the brief for appellant.

*Donald L. Merriman* for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

The question presented in this case is whether an insurance
company which has issued an automobile liability policy under
the Motor Vehicle Financial Responsibility Act has the right
to cancel the policy, in accordance with its provisions, prior to
the expiration of the period of the statutory notice of cancella-
tion, even though, concededly, the policy remained in effect dur-
ing all of that period as to injured members of the public. The
case has been ably briefed and argued.

The appeal is from the sustaining of a demurrer to the appellant's declaration, as particularized, without leave to amend. The declaration, filed in the Circuit Court for Carroll County, alleges that the appellant, Erie Insurance Exchange (the insurer), issued a policy of automobile liability insurance to the appellee, Roland W. Gosnell. An endorsement was added under the Motor Vehicle Financial Responsibility Act, Code (1967 Replacement Volume), Article 66½, Sections 93 and 116 et seq. (the Act), affording coverage, under Section 93, for named minors, including Roland E. Gosnell, the appellee's son. In accordance with Sections 131, 135, and 93(c), the insurer filed a Certificate of Financial Responsibility (form JR11) with the Maryland Department of Motor Vehicles.

The endorsement affording the statutory coverage provided in part:

> "The Insured named in the policy agrees to reimburse the Exchange for any payment made by the Exchange which it would not have been obligated to make under the terms of this policy except for the agreements contained in this endorsement."

On February 26, 1963, the insurer mailed notice of cancellation of the endorsement, form JR11, to the appellee, the cancellation to become effective March 19, 1963. The insurer also mailed notice of the cancellation, pursuant to Section 142 of the Act, to the Department of Motor Vehicles, the cancellation to become effective under the statutory provision on March 31, 1963.

On March 20, 1963, the appellee's son, Roland E. Gosnell, was involved in an auto collision resulting in claims of personal injury and property damage. The insurer settled the claims and sought to recover from the appellee the monies paid in settlement under the reimbursement provision of the endorsement.

The declaration alleges that the insurer paid the monies "solely because of the statutory effect of the JR11 endorsement." In answer to the appellee's demand for particulars, the insurer stated that, while there was no coverage of the appellee after March 19, 1963, because of the notice of cancellation, the JR11 endorsement on Roland E. Gosnell was still in op-

eration on March 20, the date of the accident. The answer stated further: "But for the statutory provision referred to, the policy would have expired March 19, 1963. Thus the endorsement, and particularly paragraph four thereof, affords the insurer the right to receive from 'the insured named in the policies' any monies paid by the company because of the JR11 endosement which it would not otherwise have been required to pay under the policy which was effectively cancelled on March 19th." The bill of particulars became part of the declaration and is binding on the pleader. *Duck v. Quality Custom Homes, Inc.*, 242 Md. 609, 613, 220 A. 2d 143 (1966), and authorities therein cited.

The policy [1] provided that the insurer could cancel it by mailing written notice to the insured not less than twenty days prior to the effective date of cancellation. It also provided that "Such terms as are in conflict with statutes of the state in which Subscriber [the insured] has his legal residence, at the time this policy is issued, are hereby amended to conform." The policy extended coverage, *inter alia,* to the named insured, any member of his household and any other person using the described automobile with the permission of the named insured.

Section 142 of the Act provides that "When any form of proof of financial responsibility has been certified to the Department * * *, such proof shall not be cancelled or annulled by any party in interest except upon not less than thirty (30) days' notice to the Department * * *." Section 130 reads as follows:

"Methods of establishing proof of financial responsibility.

Proof of financial responsibility, when required under the provisions of this article, may be established by any of the methods hereunder set forth, namely:

---

1. In his demand for particulars, the appellee asked that a copy of the policy be attached to the answer. The insurer, in its answer, filed only a copy of the endorsement, but with its memorandum to the court below, before the passage of the court's order, filed a copy of the policy. We take the furnishing of the copy as an informal compliance with the appellee's proper request in its demand for particulars and treat the policy as part of the pleadings.

(1) By a policy or policies of insurance;
(2) By a surety bond or bonds;
(3) By deposit of money or securities; all as here-
inafter provided."

Section 131, entitled "Policy of insurance as proof of financial responsibility" provides, *inter alia,* as follows: "Such policy of insurance shall meet the requirements enumerated hereunder when \* \* \* it shall specify \* \* \* that the insurance provided is in accordance with and subject to all the provisions of this article." Subsection (a)(6)(E). Subsection (b) states in part that "A policy of insurance offered as proof of financial responsibility under this article may \* \* \* (5) Contain any agreement, provision or stipulation not in conflict with or contrary to the provisions required in this article and not otherwise contrary to law; (6) Provide that any person insured by such policy shall reimburse the insurance carrier for payment made by such carrier on account of any loss, damage, claim, or lawsuit involving a breach of the terms, provisions or conditions of such policy \* \* \*."

Judge Weant, in a well-considered opinion, held that the policy could not be cancelled in any respect except upon not less than the 30 days' notice required in Section 142 of the Act. We agree.

The insurer concedes, as it must, that the intent of the Legislature in passing the Act was to protect the public from the negligent operation of motor vehicles by irresponsible drivers and to assure the ability of operators and owners to respond in damages to persons who may suffer as the result of such negligence, and that, therefore, an insurer is liable to such persons despite exclusions in the policy contrary to the Act. *National Indemnity Co. v. Simmons,* 230 Md. 234, 186 A. 2d 595 (1962), and cases therein cited. See also *Amalgamated Cas. Ins. Co. v. Helms,* 239 Md. 529, 534, 212 A. 2d 311 (1965). It contends, however, that certain defenses and rights under the policy are available to the insurer against the insured which are not available against an injured member of the public; that the purpose of the Act was fulfilled when the insurer settled the claims; and that therefore it is entitled to recover the monies so paid on

behalf of the appellee if such sums were paid solely because of the Act.

If the insurer's notice of cancellation of the policy between it and the appellee did not take effect in any way until 30 days thereafter, the insurer, under its declaration as particularized, has no right of action against the appellee. The endorsement on which the claim is based limits the right of recovery to any payment made by the insurer "which it would not have been obligated to make under the terms of this policy except for the agreements contained in this endorsement." The declaration contains no allegations as to the nature of the claims which the insurer settled or against whom the claims were made.[2] It is consistent with the allegations of the insurer that under the policy, without the endorsement, the appellee and his son were covered because, at the time of the accident, the appellee's son was a member of the appellee's household or was driving the automobile with the appellee's permission, or · as an agent of the appellee. As the insurer's answer to the appellee's demand for particulars makes clear, its case is predicated solely upon the assumption that, while the endorsement remained in effect for 30 days after the notice of cancellation, the policy to which the endorsement was appended had been effectively cancelled 20 days after the notice, and that, because the accident occurred in the intervening 10 days, the liability of the insurer could have arisen only under the endorsement. If the cancellation of the policy, as well as the endorsement, was ineffective under the Act for the 30 day period, the declaration did not state a legal cause of action, because, if the insurer were liable under the policy, the payment was not made solely because of the endorsement.

We believe that under the Act cancellation of the policy, as well as of the endorsement, was ineffective except upon 30 days' notice. Section 142 refers only to the cancellation of any form of proof of financial responsibility. Section 130 limits the methods of proof of financial responsibility to three: a policy of insurance; a surety bond; and the deposit of money or se-

---

2. In his brief, the appellee states that suit was filed not only against the appellee's son but also against the appellee. The insurer did not deny this statement.

curities. Section 142 provides that when such proof (here the policy of insurance) has been certified to the Department, "such proof shall not be cancelled" except upon not less than 30 days' notice. The Section does not refer to the cancellation of the certification (here, the JR11 form) but to the cancellation of the proof, here, the policy itself. The certification of coverage required by the Act to be given to the Department is only evidence of the issuance of the policy. Section 135. If there is a conflict between the terms of the policy and the statements in the certification, the terms of the policy control. *Reserve Ins. Co. v. Duckett*, 240 Md. 591, 600, 214 A. 2d 754 (1965).

The endorsement is not the policy; by its terms, it is only an appendage of the policy. It begins by stating that "It is agreed that: such insurance as is afforded *by the policy*" applies to the operation of any automobile by the named minor. Paragraph 4 states that "the Insured named *in the policy* agrees to reimburse the Exchange for any payment made by the Exchange which it would not have been obligated to make under *the terms of this policy* * * *." [Emphasis supplied]. The endorsement, of itself, does not contain any obligations of the insurer as to payment, except as to limits, or defense of suits. By reference, it incorporates the terms of the policy, but there is nothing contained in the endorsement to indicate that it is to be considered as a separate and independent contract. On the contrary, the original policy and the subsequent endorsement are generally to be taken together as an integrated whole. See *Rocks v. Brosius*, 241 Md. 612, 637, 217 A. 2d 531 (1966) and Appleman, *Insurance Law and Practice* §7537 and cases cited in notes 95 and 96 (Supp. 1966). This legal principle of construction is expressly set forth in the Act. Section 131 (e) provides:

> "A policy of insurance offered as proof of financial responsibility under this article, the written application therefor, if any, and any endorsement to such policy which is not in conflict with or contrary to the provisions required by this article, shall [constitute] [3] the entire contract between the parties."

---

**3.** In the 1967 replacement volume of the Code, the word "continue" appears as an apparent typographical error in place of the

When the language of a statute is plain and free of ambiguity, and has definite and sensible meaning, it is conclusively presumed to be the meaning of the Legislature; in ascertaining the legislative intent, all parts of the Act are to be considered together. *Secretary of State v. Bryson,* 244 Md. 418, 424-25, 224 A. 2d 277 (1966), and cases therein cited; *Consolidated Engineering Co. v. Cooper,* 246 Md. 610, 228 A. 2d 823 (1967). We hold that Section 142 means, clearly and unambiguously, that when a policy of insurance has been offered as proof of financial responsibility, with an endorsement specifically covering the liability of minors attached, that policy, including the endorsement as a part thereof, shall not be cancelled or annulled except upon not less than 30 days' notice.

In view of our interpretation of the Act, the provision contained in Section 131(b)(5) that the policy may contain any agreement or stipulation not in conflict with or contrary to the provisions of the Act becomes inapplicable. The 30 days' notice required by Section 142 before cancellation controls. The word "shall" as used in Section 142 in respect of the giving of not less than 30 days' notice of cancellation is mandatory. *Ginnavan v. Silverstone,* 246 Md. 500, 229 A. 2d 124 (1967), and cases therein cited. The 20 day period of cancellation provided for in the policy is in conflict with the statutory provision, and therefore is inoperative under the terms of the Act and our decisions thereunder. Compare *Amalgamated Cas. Ins. Co. v. Helms, supra,* in which a policy provision designating a period of limitation shorter than the general statutory period was held not in conflict with the provisions of the Act and therefore valid.[4]

As the court below pointed out, the insurer can find no support for its claim for reimbursement in the provision of Section 131(b)(6) that the policy may provide for reimbursement by the insured for payment made by the insurer on account of

correct word "constitute." The correct language, "shall constitute the entire contract," is found in the official version of the Act. Laws of Maryland, 1943, Ch. 1007, Section 112(E).

4. Subsequent to the *Helms* case the Legislature in 1966 passed Chapter 487 making any clause in an insurance contract which limits time for filing claims less than set by statute of limitations illegal and void.

any loss or claim involving a breach of the terms or provisions of the policy. No such breach is alleged. We find it unnecessary to consider the cases which hold that, under certain circumstances, even though an insurer is liable for injury sustained by a member of the public, nevertheless, under the policy, it may be entitled to recover from the insured the amount so paid. See, *e.g., United States Fid. & Guar. Co. v. Taylor,* 132 Md. 511, 104 Atl. 171 (1918), and *Inland Mut. Ins. Co. v. Stallings,* 162 F. Supp. 713, 721 (D. Md. 1958). Here, for the reasons above set forth, the only provision of the policy under which the insurer could claim reimbursement is not applicable.

Counsel have been able to find only two decisions of other courts which they submit as relevant on the question before us. These decisions, of intermediate appellate courts, are in conflict. In *Garden City Cab Co. v. Fidelity & Cas. Co. of New York,* 80 Ga. App. 850, 57 S. E. 2d 683 (1950), a cancellation of a policy was held effective as against the insured even though the statutory period had not expired, and a petition by the insurer to recover from the insured a sum paid to an injured member of the public was held to state a cause of action, under a provision similar to that contained in the endorsement involved in the present case. The legislation involved in that case does not seem to have contained specific provisions similar to those of the Maryland Act to which we have referred. In *Ohran v. National Auto. Ins. Co.,* 82 Cal. App. 2d 636. 187 P. 2d 66 (Cal. Dist. Ct. App. 1948), under a statute providing that insurance shall not be cancellable on less than 10 days' notice to the state agency, a contrary conclusion was reached. The California court said:

> "In accordance with these views it must follow that the legislature enacted section 7 of the Highway Carriers' Act with full contemplation of the practice and use of cancellation clauses generally as between insurer and insured and that it intended therein to limit this right of cancellation according to the strict terms of the statute, making such notice indispensable for an effective termination both as to the parties and to the public." 187 P. 2d at 70.

We have found no other decision which we regard as sufficiently relevant for discussion. As Appleman, *op cit. supra,* states at § 5013: "A cancellation provision in a compulsory motor vehicle liability policy is controlled by the statutory requirements." In this case, the requirement of the Act, as we interpret it, makes the 30 day notice a requisite for an effective cancellation as between the parties to the policy as well as to the public, and the decision of the lower court in sustaining the demurrer was therefore correct.

*Judgment affirmed; costs to be paid by appellant.*