MILLS AND FEDERAL MUTUAL INSURANCE COMPANY *v.* JUDD, Infant, by Joan Judd Her Mother and Next Friend, and JOAN JUDD

[No. 95, September Term, 1969.]

*Decided December 10, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SINGLEY, JJ.

*Edwin H. Miller*, with whom were *Miller, Miller & Kuczynski* on the brief, for appellants.

*Ernest V. Wachs,* with whom were *Wachs & Kreyken-bohm* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

This case is before us on appeal from a decision of the Circuit Court for Washington County which held that a policy of insurance written by the defendant-appellant, Federal Mutual Insurance Company (Company), did provide liability coverage for defendant-appellant, Gary Lee Mills, a minor, who through the negligent operation of an automobile had caused injury to the plaintiff-appellee, Regina Judd, in an accident occurring in West Virginia. The facts before us are not in dispute but rather the legal interpretation which should be given to them.

Bruce Mills, Gary's father, had obtained a public liability policy on his 1960 Pontiac from Federal Mutual. When Gary, who is a minor, obtained a license, an endorsement designated as "Statutory Coverage for Named Minors" and commonly referred to as the JR-11 coverage was added to the policy. This JR-11 coverage is necessary if the parent, guardian, or other responsible adult who signed the minor's application for a driver's license, is to be free from the imputation of the negligence of the minor. Maryland Code (1967 Repl. Vol.) Art. 66½, § 93.

A second endorsement to this policy designated as "Use of Other Automobiles Endorsement-Broad Form," read in pertinent part:

"2 (b) This endorsement does not apply:
(4) to any automobile owned by the named insured or named individual or a member of the same household." (The named insured for the purpose of this provision was Gary Lee Mills.)

On September 22, 1967, Gary was driving his mother's automobile in West Virginia when the accident occurred. Regina Judd, appellee, was a passenger in the car and

sustained injuries in the accident. She brought suit against Gary and recovered a judgment against him. In an effort to collect this judgment, a suit was filed against Federal Mutual alleging that the policy required the company to pay appellee for damages caused by Gary Mills.

The insurance policy issued by the Company to the father covering public liability and property damage, the "Use of Other Automobiles Endorsement-Broad Form," and the "Statutory Coverage for Named Minors," JR-11 endorsement, must all be read and considered as a whole. Appleman, *Insurance Law and Practice*, Section 7537, *"Endorsements."* See also *Erie Insurance Exchange v. Gosnell*, 246 Md. 724, 731, 230 A. 2d 467 (1967). Under such a rule of construction it is clear that, because of the exclusions contained in the "Use of Other Automobiles Endorsement-Broad Form," the Company was not liable for any accident which occurred while Gary was operating his mother's car. However, the "Statutory Coverage for Named Minors," JR-11 endorsement, in effect created an exception to the exclusions contained in the "Use of Other Automobiles Endorsement-Broad Form" in that it did provide coverage for Gary "* * * *when driving a motor vehicle upon a highway in this State.* * * *"; otherwise, it would not have conformed with the requirement of § 93 (b) of Art. 66½. The question is, however, did this "Statutory Coverage for Named Minors," JR-11 endorsement, also have the effect of providing coverage while Gary was driving his mother's car outside of the State of Maryland?

The lower court held, and we think erroneously so, that the "Statutory Coverage for Named Minors," JR-11 endorsement, covered Gary while operating his mother's car outside the State of Maryland. In our opinion, the reasoning which produced this conclusion placed unwarranted reliance upon § 131 of Art. 66½, titled, *"Policy of Insurance as Proof of Financial Responsibility."* The court below stated:

"* * * The financial responsibility to be fur-

nished was formally set forth in Section 119, now Section 122. Financial responsibility of minors as well as other motorists, is also regulated by Section 131 of Article 66½. This Section is headed "Policy of Insurance as Proof of Financial Responsibility." A part of this Section reads as follows:

'(a) Such policy of insurance shall meet the requirements enumerated hereunder when:

(5) It shall provide insurance anywhere within the continental limits of the United States or the Dominion of Canada.'

The original policy of insurance issued to the Father of Gary Lee Mills did necessarily include the provisions of this statutory mandate.

No point is made here that the JR-11 attached to the Father's policy does not cover the car owned by the Mother and which was involved in the accident. By proper endorsement, the JR-11 in this case provides that the insurance applies to the operation of any automobile by the minor."

To understand wherein the lower court erred, we first turn to the JR-11 endorsement or, as it is technically titled, the "Statutory Coverage for Named Minors," which expressly provides in relevant part:

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and Property Damage Liability applies to the operation of any automobile by the minor named below in accordance with the provisions of *Section 93 of Article 66½* of the Annotated Code of Maryland (1957 Edition) as amended, * * *." (Emphasis supplied.)

We turn next to the following pertinent part of subsections (b) and (d) of § 93 of Article 66½.

"(b) *Imputation of negligence.* — Any neg-

ligence of a *minor* under the age of twenty-one (21) years *when driving a motor vehicle upon a highway in this State* shall be imputed to the person who has signed the application of such minor for a permit or license, * * *" (Emphasis supplied.)

"(d) *Compliance with proof of financial responsibility as required by § 122 of this article.* —On and after June 1, 1954, the application of any person under the age of twenty-one (21) years for an instruction permit or operator's or chauffeur's license shall be accompanied by *such proof of financial responsibility as is required under the provisions of § 122* of this article. * * *" (Emphasis supplied.)

It is important to note that nowhere in § 93 is any mention made of § 131, but rather reference is made to "such proof of financial responsibility as is required under the provisions of § 122 of this article [Art. 66½]." [1]

We now turn to § 122, which requires that:

"(a) *Generally.*—Within ninety days after the receipt of a report of a motor vehicle accident within this State which has resulted in bodily injury or death or property damage in excess of $100.00, the Department shall suspend the license of each operator and all registration of the owner of a motor vehicle in any manner involved * * *, unless such operator or owner or both shall deposit security in a sum which shall be sufficient * * * to satisfy any judgment or judgments for damages resulting from such accident * * * and unless such operator or owner or both, has previously given or shall immediately give and thereafter main-

---

1. Subsection (d) of Section 93 of Article 66½ has been repealed by Chapter 691 of the acts of 1968, which had an effective date of July 1, 1968; however, this repeal would have no effect on the case at bar as the accident occurred September 22, 1967.

tain, for a period of three (3) years, proof of financial responsibility; * * *"

"(b) *Operators or owners covered by insurance.*—This section shall not apply:

(1) * * *

(2) To such operator, if not the owner of such motor vehicle, if there was in effect at the time of such accident an automobile liability policy or bond with respect to his operation of motor vehicles not owned by him.

(3) To such operator or owner if the liability of such operator or owner for damages resulting from such accident is, in the judgment of the Department [of Motor Vehicles], covered by any other form of liability insurance policy or bond."

We emphasize that in the case at bar, the father and Gary did not have to obtain insurance after the fact of the accident. If they had been uninsured at the time of the accident, then, unquestionably they would have been in the position of having to obtain an insurance policy in keeping with the provisions of § 131 of Art. 66½ titled, *"Policy of Insurance as Proof of Financial Responsibility."* Section 131 does require that the policy "* * * provide insurance anywhere within the continental limits of the United States or the Dominion of Canada." It is upon this section that the opinion of the lower court erroneously turns.

In the instant case, at the time of the accident the father already had in effect insurance coverage which would have released him of the burden of any imputed negligence, under the laws of Maryland, arising out of his son's operation of a motor vehicle. Art. 66½, § 93 (b). This insurance coverage satisfied the requirements of § 93 and § 122 of Art. 66½, and in our opinion this was all that was necessary for the father and minor son to operate a motor vehicle in this State in keeping with the financial responsibility provisions of Art. 66½.

For a better understanding of the distinction which must be observed between the type of insurance that may satisfy § 122, as contrasted with the type of insurance policy required by the provisions of § 131, we look to the case of *Fidelity & Casualty Co. v. McConnaughy,* 228 Md. 1, 179 A. 2d 117 (1962), which we think contains the answer to the question before this Court. In *McConnaughy,* the insurance carrier after filing a certificate showing that the negligent motorist was insured (Form SR 21) endeavored to escape liability by interposing the defense of non-cooperation on the part of the insured. However, the party injured by the insured motorist obtained judgment against him and then sued the insurance carrier contending that by virtue of the provisions of § 131 (a) (6) (F) of Art. 66½, the insurance carrier was precluded from setting up such a defense against the insured. This Court in upholding the insurance carrier's right to avail itself of the defense of non-cooperation on the part of the insured, speaking through Judge Hammond (now Chief Judge), said:

"Under Maryland's Financial Responsibility Law, unless the owner or operator of a motor vehicle which is involved in an accident carries liability insurance and the insurer files a certificate so stating, the owner or operator must deposit security to meet possible judgments and must also show 'proof of financial responsibility' for the future, or else lose his license and registration. Code (1957), Art. 66½, Sec. 122. The Department of Motor Vehicles requires proof of such insurance in the form of a certificate by the insurer on a form commonly called an SR-21.

Although an insurance company issuing a policy to meet the requirement of 'proof of financial responsibility' is by Sec. 131 (a) (6) (F) precluded from setting up, as against a judgment-creditor of the insured, defenses that

arise out of the insured's conduct (such as failure to cooperate), Sec. 131 (a) (6) (F) does not apply to those insurance policies which except an owner or operator from the security and financial responsibility requirements of Sec. 122 since these policies are not issued as 'proof of financial responsibility,' as that term is artfully used in Sec. 122 and in other sections of the Financial Responsibility Law. *Citizens Co. v. Allied Co.*, 217 Md. 494, 500; 40 Op. Atty. Gen. 329. Therefore, an insurer is not precluded from setting up a defense against a judgment-creditor because it has filed an SR-21 form with the Department of Motor Vehicles, stating that the motorist involved in an accident was then insured. The District Court for Maryland has so held. *State Farm Mut. Automobile Ins. Co. v. West,* 149 F. Supp. 289, 308-9. And the decisions elsewhere construing similar statutes generally are in accord. *Grady v. State Farm Mut. Automobile Ins. Co.,* 264 F. 2d 519, 522 (4th Cir.) (applying Virginia law) ; *Farm Bureau Mut. Automobile Ins. Co. v. Hammer,* 177 F. 2d 796-798 (4th Cir.) (applying Virginia law) ; *Hoosier Cas. Co. of Indianapolis, Ind. v. Fox,* 102 F. Supp. 214, 229-240 (N.D. Iowa E.D.) (applying Iowa law) ; *Seaford v. Nationwide Mutual Insurance Co.,* 117 S.E.2d 733, 737, (N.C.) ; but see the judicial treatment of the Wisconsin statute, discussed in 106 U. Pa. L. Rev. 928.

The insurer's right to assert nonliability was not foreclosed by its filing the SR-21 form."

We also think the language of this Court in *Citizens Co. v. Allied Co.,* 217 Md. 494, 144 A. 2d 73 (1958) lays bare the problem with clarity:

"The requirements above stated which an insurance policy must meet in order to qualify for the exemption from suspension of licenses

> and registrations under *Section 122 are less in a number of respects than those set forth in Section 131 with regard to insurance policies offered as proof of financial responsibility;* but the minimum coverages required for the exception under Section 122 and as proof of financial responsibility under Section 134, which supplements Section 131 as to this important matter, are the same." (Emphasis supplied.) *Id.* at 501.

Within the frame of reference afforded by § 93 and § 122 of Art. 66½, buttressed by the obvious inapplicability of § 131 of Art. 66½ as demonstrated by the opinions in *McConnaughy* and *Citizens,* we are of the opinion that Gary was not covered by insurance under the policy or its endorsements while operating his mother's automobile outside the State of Maryland.

The appellee places much store in the fact that the Form JR-11 filed by the Company with the Department of Motor Vehicles "certifies that the Minor named above is insured under a policy of insurance covering his liability thereunder as the operator of any automobile." We are of the opinion that the filing of this Form JR-11 had no bearing on the minor's insurance coverage outside the State of Maryland. The significance of the Form JR-11 was placed in its proper perspective in the recent case of *Peninsula Insurance Co. v. Houser,* 248 Md. 714, 721, 238 A. 2d 95 (1968), wherein Judge Singley writing for the Court stated:

> "* * * *The insurers liability was fixed by the policy, not by the certification or proof. * * *.*"
> (Emphasis supplied.)

See also *Rodda v. Nationwide,* 230 Md. 38, 42, 185 A. 2d 380 (1962).

We would also point out that the "Statutory Coverage for Named Minors," JR-11 endorsement, attached to the father's policy refers specifically to the operation of any automobile by the minor "in accordance with the

provisions of § 93 of Article 66½." The only fair and sensible meaning which may be given to this wording is that it was intended to be co-extensive with the scope of statutory liability imputed to the father. This means coverage of the minor son "* *. * when driving a motor vehicle upon a highway in this State * * *." Art. 66½, § 93 (b).

Furthermore, the obvious purpose for obtaining the endorsement was to substitute it for the imputation of the minor's negligence which the statute places on the adult (the father in this case) who signs the minor's license application. The imputation of the minor's negligence is not extended by the statute beyond his operation of an automobile on the highways of this State. Accordingly, a "Statutory Coverage for Named Minors" endorsement satisfies the burden of the imputed negligence imposed by § 93 (b) when it covers the minor's operation of a motor vehicle within this State. It is the securing of protection against this exposure to the risk created by the imputed negligence which is the purpose of the endorsement.

Such a construction as we here place on the JR-11 endorsement is in harmony with the interpretation which has been given to the Maryland Statute by the Federal Courts. In *Herr v. Holohan,* 131 F. Supp. 777 (D. Md. 1955) the imputed negligence provision of § 93 (then § 92) of Art. 66½ was before the Court which, holding the father not liable, stated:

> "There is no statutory liability on the defendant in this case. When the son obtained his Maryland learner's license, under which he was operating the car at the time of the accident, defendant signed the application and thereby made himself liable to the same extent as the son for any accident *which occurred on the public highways of Maryland.* Annotated Code of Maryland, Article 66½, Sec. 92 (now 93). This Statute does not cover any accident *outside of Maryland." Id.* at 781

To similar effect see *Tsoy v. MacFarland*, 219 F. Supp. 220 (D. Md. 1963). In *Tsoy* the Court, however, added the admonition for a strict statutory construction in view of the Maryland cases stating:

> "* * * Imputation of negligence was unknown to the Common Law, and a Statute creating liability on that basis must be construed strictly." *Id.* at 224.

In view of what we have stated in this opinion, we think the court below erred in passing an order dismissing the pleas of the Company as garnishee.

*Order reversed, appellees to pay costs.*